
IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs March 14, 2017

**JUSTIN PARLIMENT v. STATE OF TENNESSEE**

**Appeal from the Circuit Court for Hickman County**
**No. 13-CV-57      James G. Martin, III, Judge**

_____

**No. M2016-00945-CCA-R3-PC**

_____

The Petitioner, Justin Parliment, was convicted of possession of a controlled substance in a penal institution and sentenced to eight years to be served consecutively to a previously-imposed twenty-three-year sentence for second degree murder.  The Petitioner filed a petition for post-conviction relief alleging that he received the ineffective assistance of counsel, and the post-conviction court denied the petition.  After a thorough review of the record and applicable law, we affirm the judgment of the post-conviction court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

NORMA MCGEE OGLE, J., delivered the opinion of the court, in which ROBERT W. WEDEMEYER and CAMILLE R. MCMULLEN, JJ., joined.

Jonathan W. Turner, Thompson's Station, Tennessee, for the appellant, Justin Parliment.

Herbert H. Slatery III, Attorney General and Reporter; Sophia S. Lee, Senior Counsel; Kim R. Helper, District Attorney General; and Sean Duddy, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

**I. Factual Background**

On direct appeal, this court summarized the underlying facts as follows:

A Hickman County Circuit Court jury convicted the defendant of possession of a controlled substance in a penal institution based upon proof

that he possessed 78 grams of marijuana inside Turney Center Industrial Prison on April 12, 2009.

At trial, corrections officer Heather Scott testified that she was in the control room monitoring a live feed from cameras located in the secured visiting area of the prison on April 12, 2009. She said that she paid particular attention to the defendant and his female visitor because "[i]t was about 40 degrees outside. They were the only people that went outside." As she watched the couple, the female visitor left the table and went into the restroom. Officer Scott described what happened when the woman returned from the restroom: "She returned to the table and she pulled her britches out and reached in her pants and passed on something beside of her. She laid it on the chair beside of her. And Mr. Parliment reached over and got it and put it in his pants." After viewing this exchange, Ms. Scott called Corporal Jason Clendenion "to take care of it." She said that Corporal Clendenion "called the people he needed to call and went out there" and that, once outside, the officers "took [the defendant] into custody and [were] going to take him and search him."

During cross-examination, Ms. Scott admitted that she did not actually see the object that was passed between the defendant and his visitor. During redirect examination, however, she maintained that she observed the visitor reach into her waistband, remove an object, and place the object on the chair before the defendant reached for the object and placed it inside his own waistband.

A video recording of the transaction between the defendant and his visitor was played for the jury.

Corporal Jason Clendenion testified that when Officer Scott directed his attention to the monitor displaying the defendant and his visitor, he "saw two people sitting at a picnic table and one of them handing an object to another." He said that he radioed the corrections officers working in that area and told them to take the defendant into custody. He then left the control room and met the other officers and the defendant at "the back of B building." Corporal Clendenion said that he "took up an escort position with the officers." From his vantage point, Corporal Clendenion saw the defendant shake his leg, and an object "fall out of his pants leg on the right." He described the object: "It was an insertion pellet. It looked like, I guess, a condom with an object that looked to be black inside of it, maybe a black, taped-up object."

During cross-examination, Corporal Clendenion said that there were monitored cameras in the area where the defendant dropped the object from his pants but that there was no video recording of the defendant's dropping the item because those cameras were "not hooked up to any type of recording device." Corporal Clendenion acknowledged that he did not actually see the object exchanged between the defendant and his visitor, but he maintained that he saw the visitor "digging into her pants and handing something to [the defendant]."

Corrections Officer Chris Jordan, who was guarding the "[p]icnic area and visitation" on April 12, 2009, testified that the defendant and his visitor were the only people at the outdoor visitation area. During the visit, Officer Jordan received a radio call "to check [the defendant]." After receiving the call, Officer Jordan "went and got [the defendant] and took him to the back desk to search him." Officer Jordan said that when the defendant "stood up, his zipper was unzipped." As the officers escorted the defendant to the area where he would be searched, "[h]e dropped a capsule out of his pants leg leading up to some steps to B building." Officer Jordan recalled that the object "was wrapped in black tape, about five, six inches in length, about the size of a half dollar around." Officer Jordan testified that he "was just about to turn back around and go back to the picnic area when [the defendant] shook his leg and the capsule fell out on the ground."

Corrections Officer Christopher Brouse, who assisted Officer Jordan in taking the defendant into custody, testified that he told the defendant that "if he had anything that it would be wise to . . . turn it over to" the guards. He said that as they walked up a set of stairs, the defendant "shook his leg . . . and a black cylindrical object fell out of his pants leg wrapped in a condom." Officer Brouse said that Sergeant David Gary took the item into his possession and took the defendant inside "to be strip searched."

Sergeant David Gary testified that he received "notification from the control room that there's been a pass off on some drugs" and responded to "the back" of the building where the officers were escorting the defendant. Sergeant Gary said that as the defendant walked up some stairs, "he stopped and what we call an insertion pellet fell out." He recalled that the pellet "was approximately four to six inches long wrapped in black electrical tape." Sergeant Gary "put on a rubber glove and reached down and picked it up." Officers took the defendant inside, and Sergeant Gary "opened the pellet to see what was in it." Inside the pellet, Sergeant Gary

found marijuana wrapped in plastic wrap and sealed with black electrical tape. Sergeant Gary testified that he field tested, photographed, and weighed the substance and then kept it in his possession until institutional investigator Nicky Jordan arrived to take possession of it.

Sergeant Nicky Jordan, who worked in the internal affairs division of the Tennessee Department of Correction ("TDOC") as the institutional investigator at Turney Center, testified that he received a telephone call from Sergeant Gary and went to the prison to investigate. When he arrived at the prison, he spoke with Sergeant Gary and took possession of the material that Sergeant Gary had removed from the ground after the defendant dropped it. Sergeant Jordan said that he weighed the substance, placed it into an evidence bag, sealed it with tamper-proof tape, and locked it in a safe in his office. He then took statements from the witnesses, and, based on the information he had at that point, he obtained a warrant to arrest the defendant's visitor.

Four days later, transportation officer Homer Kerry transported the substance to the Tennessee Bureau of Investigation ("TBI") for testing.

During cross-examination, Sergeant Jordan said that he was confident that the substance was marijuana based upon his experience in corrections and the results of the field test performed by Sergeant Gary. He said that the purpose of the supplemental testing done by the TBI was to provide an "exact weight and an exact identification" in preparation for the defendant's prosecution.

TBI Agent and Forensic Scientist Brett Trotter testified that the material he received inside the sealed evidence bag from Turney Center was 78.0 grams of marijuana.

Based upon this proof, the jury convicted the defendant of possession of a controlled substance inside a penal institution and imposed a $5,000 fine. Following a sentencing hearing, the trial court imposed a sentence of eight years' incarceration to be served consecutively to the defendant's 23-year sentence for a conviction of second degree murder. The defendant filed a timely but unsuccessful motion for new trial followed by a timely notice of appeal. In this appeal, the defendant contends that the evidence was insufficient to support his conviction, that the trial court erred in its instructions to the jury, that the State failed to establish a sufficient

chain of custody for the marijuana introduced at trial, and that the sentence and fine are excessive.

State v. Justin Parliment, No. M2011-00520-CCA-R3-CD, 2012 WL 1895949, at *1-3 (Tenn. Crim. App. at Nashville, May 23, 2012), perm. to appeal denied, (Tenn. Oct. 19, 2012).

Relevant to the issues presented in the Petitioner's petition for post-conviction relief, this court addressed the following evidentiary issues on direct appeal of the Petitioner's conviction:

> The defendant argues that the trial court erred by admitting the marijuana and TBI test results related to the marijuana into evidence because the State failed to establish a "proper chain of custody." Specifically, the defendant alleges that evidence of the chain of custody was inadequate because the State failed to present the testimony of the officer who transported the marijuana from the prison to the TBI laboratory.

> . . . .

> Sergeant Gary testified that he took possession of the package immediately after the defendant dropped it to the ground and kept it in his possession until turning it over to Sergeant Jordan. Sergeant Jordan testified that he placed the item into an evidence envelope, sealed it with tamper-resistant tape, and placed the envelope into a safe that could only be accessed by him. He said that he removed the item four days later and gave it to Officer Homer Kerry, who transported it to the TBI. Agent Trotter testified that the TBI log showed that Officer Kerry delivered the package to the TBI on that same day and that the envelope was still sealed when he retrieved it for testing approximately one month later. Sergeant Jordan then retrieved the package from the TBI laboratory on the day of trial. This evidence sufficiently established the chain of custody of the marijuana, and the trial court did not err by admitting the marijuana or Agent Trotter's testimony regarding the tests performed on it.

Id. at *7. This court affirmed the Petitioner's conviction and sentence. Id. at * 10.

The Petitioner filed a petition for post-conviction relief. The post-conviction court appointed counsel, and counsel filed an amended petition alleging the following issues: (1) "trial counsel failed to object to the testimony regarding the inadmissible results of a

field test for marijuana"; (2) "trial counsel repeatedly failed to object to the testimony regarding the lay opinion testimony of plant material being marijuana"; (3) "trial counsel failed to object to the [TBI lab request form] chain of custody form having a lay opinion statement of 'marijuana'"; (4) "trial counsel failed to object to Nicky Jordan's and Brett Trotter's hearsay testimony regarding Homer Kerry receiving and delivering plant material to the TBI lab and thus violated the Petitioner's right to confrontation"; (5) "trial counsel failed to object to Nicky Jordan wrongfully testifying that Homer Kerry signed . . . the chain of custody form"; (6) "trial counsel failed to argue that the chain of custody form had not been authenticated properly as [the chain of custody form]"; (7) "trial counsel failed to object to the admissibility of [the marijuana recovered from the Petitioner] due to failure of witnesses to identify the exhibit and to a lack of chain of custody"; and (8) "trial counsel failed to object to the admissibility of the lab report due to [the aforementioned issues]." The Petitioner argued that if the TBI lab report had not been admitted into evidence, "the Petitioner could not or would not have been convicted."

At the post-conviction relief hearing, post-conviction counsel asserted that the direct appeal decision did not address the same concerns related to chain of custody as raised in the petition. Counsel contended that the post-conviction court could reconsider the issue of chain of custody because if trial counsel had properly objected, the facts that this court considered would have been different and led to a different conclusion regarding the sufficiency of the evidence. The only evidence that post-conviction counsel presented at the evidentiary hearing was the trial transcript and exhibits.

The State argued that the Petitioner's arguments (4) through (8) were addressed by this court on direct appeal. The State contends that without trial counsel's testimony, we must presume that counsel's decisions were based on trial strategy. The State also argued that the Petitioner's arguments (1) through (3) regarding chain of custody did not provide grounds for relief because expert testimony confirmed that the substance was marijuana; therefore, any potential error in allowing lay testimony as to the type of substance was harmless.

The post-conviction court found that arguments (1) through (3) could not be supported by the record because this court's decision on the sufficiency of the evidence and chain of custody adequately addressed the question as to whether the substance was marijuana. Additionally, the post-conviction court found that arguments (1) through (3) simply challenged trial counsel's trial strategy. The post-conviction court found that arguments (4) through (8) could not be supported considering this court's decision on the issue of chain of custody on direct appeal. The post-conviction court concluded that based on the record, it had no basis to find that trial counsel was deficient. The post-conviction court also concluded that even if it were to assume that trial counsel acted

deficiently, there was no proof that the "deficiency would have affected the outcome of the case."

## II. Analysis

Post-conviction relief "shall be granted when the conviction or sentence is void or voidable because of the abridgment of any right guaranteed by the Constitution of Tennessee or the Constitution of the United States." Tenn. Code Ann. § 40-30-103. Generally, "appellate courts must defer to a post-conviction court's findings with regard to witness credibility, the weight and value of witness testimony, and the resolution of factual issues presented by the evidence." Id. (citing Momon v. State, 18 S.W.3d 152, 156 (Tenn. 1999)).

To be successful in a claim for post-conviction relief, a petitioner must prove factual allegations contained in the post-conviction petition by clear and convincing evidence. See Tenn. Code Ann. § 40-30-110(f). "'Clear and convincing evidence means evidence in which there is no serious or substantial doubt about the correctness of the conclusions drawn from the evidence.'" State v. Holder, 15 S.W.3d 905, 911 (Tenn. Crim. App. 1999) (quoting Hodges v. S.C. Toof & Co., 833 S.W.2d 896, 901 n.3 (Tenn. 1992)). Issues regarding the credibility of witnesses, the weight and value to be accorded their testimony, and the factual questions raised by the evidence adduced at trial are to be resolved by the post-conviction court as the trier of fact. See Henley v. State, 960 S.W.2d 572, 579 (Tenn. 1997). Therefore, the post-conviction court's findings of fact are entitled to substantial deference on appeal unless the evidence preponderates against those findings. See Fields v. State, 40 S.W.3d 450, 458 (Tenn. 2001).

"It is fundamental that habeas corpus and post-conviction proceedings may not be employed to raise and relitigate or review questions decided and disposed of in a direct appeal." Long v. State, 510 S.W.2d 83, 87 (Tenn. Crim. App. 1974).

A claim of ineffective assistance of counsel is a mixed question of law and fact. See State v. Burns, 6 S.W.3d 453, 461 (Tenn. 1999). We will review the post-conviction court's findings of fact de novo with a presumption that those findings are correct. See Fields, 40 S.W.3d at 458. However, we will review the post-conviction court's conclusions of law purely de novo. Id.

When a petitioner seeks post-conviction relief on the basis of ineffective assistance of counsel, "the petitioner bears the burden of proving both that counsel's performance was deficient and that the deficiency prejudiced the defense." Goad v. State, 938 S.W.2d 363, 369 (Tenn. 1996) (citing Strickland v. Washington, 466 U.S. 668, 687 (1984)). To establish deficient performance, the petitioner must show that counsel's

performance was below "the range of competence demanded of attorneys in criminal cases." Baxter v. Rose, 523 S.W.2d 930, 936 (Tenn. 1975). To establish prejudice, the petitioner must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Strickland, 466 U.S. at 694. Further,

> [b]ecause a petitioner must establish both prongs of the test, a failure to prove either deficiency or prejudice provides a sufficient basis to deny relief on the ineffective assistance claim. Indeed, a court need not address the components in any particular order or even address both if the [petitioner] makes an insufficient showing of one component.

Goad, 938 S.W.2d at 370 (citing Strickland, 466 U.S. at 697).

Here, the Petitioner argued that trial counsel should have made various objections at trial. However, he failed to provide any proof to support his arguments beyond the trial record, and the post-conviction court found that the Petitioner did not meet his burden of proving deficiency or prejudice because he provided inadequate proof. In State v. William Granville Howell, this court held that the defendant could not meet his burden for an ineffective assistance of counsel claim where he only made "legal arguments and references to the transcript" but did not testify, did not "elicit testimony of his trial counsel," and did not provide the reviewing court any other evidence. No. W2005-02837-CCA-R3-CD, 2007 WL 286298, at *9 (Tenn. Crim. App. at Jackson, Feb. 1, 2007). The Petitioner offered no explanation in the record or on appeal regarding his failure to present testimony at the post-conviction hearing. Accordingly, we conclude that the record supports the decision of post-conviction court and affirm the denial of the petition.

### III.  Conclusion

Based upon the record and the parties' briefs, we affirm the judgment of the post-conviction court.

_____
NORMA MCGEE OGLE, JUDGE
